**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JOSEPH KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:26-CV-49 (MTT)** |
| | ) | |
| **CITY OF COCHRAN, GEORGIA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

On May 7, 2026, the Court granted Plaintiff Joseph Kelly's motion to proceed *in forma pauperis* ("IFP") and ordered him to recast his complaint to address deficiencies. ECF 4. Kelly has filed an amended complaint[1] in response to that order. ECF 6. Because Kelly is proceeding IFP, the Court must screen and dismiss his amended complaint if: (1) if it is frivolous or malicious; (2) if it fails to state a claim upon which relief may be granted; or (3) if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "has little or no chance of success," meaning that it appears "from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal citation omitted). "A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a

[1] On May 27, 2026, Kelly filed an amended complaint. ECF 5. The next day, Kelly filed another amended complaint. ECF 6. Clearly, the May 28, 2026 "Second Amended Complaint" was intended to replace the May 27, 2026 amended complaint. Thus, the operative complaint is the May 28, 2026 amended complaint, which the Court refers to in this order as the amended complaint.

dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)."[2] *Thomas v. Harris*, 399 F. App'x 508, 509 (11th Cir. 2010) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)). Because Kelly is proceeding pro se, his pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation modified). That said, "the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008).

## I. BACKGROUND

Kelly filed this action against fourteen various officers, judges, and prosecutors located in and near Bleckley County, Georgia. ECF 6 at 2-5. Kelly's claims arise from various arrests, searches, and court proceedings relating to criminal charges brought in 2024.

Beginning in 2019, Kelly owned and controlled the "Bleckley.org" internet domain. ECF 6 ¶ 1. He was the custodian of records for all public records relating to the Bleckley.org domain. *Id.* ¶ 2. According to Kelly, Defendant Daniel Cape, the Sheriff of Bleckley County, asked Defendant Mike Davis, the county commissioner, to terminate the county's contract with Kelly after discovering his criminal background on or about May 10, 2024. *Id.* ¶ 6. Kelly sought a $3,500 payment for the city's use of the domain. *Id.* ¶ 8. Throughout June of 2024, "disputes arose between Plaintiff and Bleckley County officials" concerning ownership of and access to the Bleckley.org domain. *Id.* ¶ 10.

---

[2] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 n.4 (11th Cir. 2016) (citation modified).

On June 14, 2024, the Bleckley County Sheriff's Office initiated a criminal inquiry regarding an alleged internal leak of a public court document. *Id.* ¶ 11. As best the Court can tell, the Sheriff's Office concluded that Kelly hacked an email account to obtain access to the emails from a Magistrate Judge who presided over a child custody dispute between Kelly and his former partner, Cindy Hetzer. *Id.* ¶¶ 11, 13. The matter was then assigned to Defendant Zachary Polk, a GBI agent, due to conflicts. *Id.* ¶ 13.

On June 28, 2024, Polk obtained a warrant for Kelly's arrest and a search warrant for Kelly's residence, suspecting Kelly of committing the offense of Computer Invasion of Privacy under O.C.G.A. § 16-9-93(c). *Id.* ¶ 14-16. Kelly alleges that Polk had no evidence Kelly violated the cited law and that Polk failed to tailor the scope of the search warrant to items specifically related to "a narrow, authenticated digital intrusion." *Id.* ¶ 20. Officers executed the search warrant, which Kelly alleges resulted in the confiscation of "all electronic devices within the home." *Id.* ¶ 24.

On July 10, 2024, Kelly was arrested. *Id.*¶ 35. He alleges the arrest warrant expired two days before, on July 8, 2024. *Id.* ¶¶ 35-36. Kelly had two cell phones, a laptop, and four hard drive devices that were seized from his person when he was taken into custody. *Id.* ¶ 35. While Kelly was in custody, Commissioner Davis allegedly provided Defendant Bradford Childers, a former Assistant District Attorney in the Oconee County Judicial Circuit, with a "list of demands and conditions the County expected Plaintiff to satisfy before payment of outstanding invoices or before further bond negotiations or discussions would proceed." *Id.* ¶ 38. On August 8, 2024, Childers allegedly arranged a meeting at the Bleckley County jail concerning Kelly's bond status. *Id.* ¶ 39. Kelly remained incarcerated until August 13, 2024, when Defendant Judge

Sarah Wall executed a bond agreement authorizing his release. *Id.* ¶ 48. According to Kelly, the bond conditions extended "beyond ordinary criminal-release conditions," including "matters involving property rights, domain control, digital infrastructure, and related civil disputes involving Bleckley County." *Id.* ¶¶ 49-50.

On August 14, 2024, Kelly attempted to file a criminal complaint against Defendant Mike Davis for "computer invasion of privacy and related misconduct." *Id.* ¶ 144. Kelly alleges Defendant Officer Doe would not accept a criminal complaint against Davis. *Id.* ¶¶ 145-46. When Kelly followed Defendant Doe to his patrol car to identify him, Doe allegedly told Kelly, "If I were you, I'd be very careful." *Id.* ¶ 149. Kelly then asked Defendant Captain Matthew Leopard to accept a complaint concerning both Davis's alleged conduct and Doe's alleged threat, but Leopard refused. *Id.* ¶¶ 151-52. Kelly subsequently reported the matter to Defendant Chief Trawick, who told Kelly that he would "look into it." *Id.* ¶¶ 153-55. Kelly alleges Trawick took no action. *Id.* ¶ 155.

On November 19, 2024, Kelly was again arrested for violating a protective order by recording his former partner while waiting with her at a counseling facility where their minor child had an appointment. *Id.* ¶¶ 53, 72. According to Kelly, his former partner recorded herself insulting Kelly, and Kelly then began recording on his phone for "self-protection." *Id.* ¶ 55. The two continued to record on their phones, and Kelly ultimately called 911. Id. ¶ 58. Defendant Brandi Crabb, a Cochran police officer, arrived on the scene at around 7:00 p.m. *Id.* ¶ 59. Kelly alleges that Crabb spoke with Childers, who then came to the scene. *Id.* ¶¶ 66-67. Childers allegedly discussed the incident with Judge Wall, spoke with his supervisor, and instructed Officer Crabb to arrest Kelly. *Id.* ¶¶ 67-71. Kelly alleges there was no probable cause for his arrest. *Id.* ¶ 73.

At his November 22, 2024, bond revocation hearing, Kelly alleges Officer Crabb made false statements that were then adopted by Defendant Matthew Leopard to obtain a search warrant. *Id.* ¶¶ 79-83. Judge Wall, who presided over the bond revocation hearing, revoked the bond because she found that Kelly "'otherwise invaded' [his former partner's] privacy by recording in her presence." *Id.* ¶ 92. Kelly alleges Judge Wall's conclusion was the result "of ex parte coordination" and the adoption of a legal theory first advanced by his former partner. *Id.* ¶ 93-94.

Kelly's ongoing custody proceedings concluded with an evidentiary hearing on December 9, 2024. *Id.* ¶ 103. Kelly subpoenaed Officer Leopard and attempted to introduce the videos he recorded on his phone from the November 19, 2024 incident. *Id.* ¶ 104. Officer Leopard addressed the court, explaining that the phone was part of an active investigation and should not be used in open court. *Id.* ¶ 107. Judge Howard Kaufold, who presided over the hearing, informed the parties that the District Attorney's office moved to quash the subpoena and prevent the video from being played.[3] *Id.* ¶ 110. Judge Kaufold ruled that the recordings would not be introduced and continued the matter for a hearing on the motion to quash. *Id.* ¶ 116. Kelly alleges that no motion had been filed. *Id.* ¶ 111. Rather, Kelly alleges that Judge Kaufold "solicited or induced the filing or transmission of the motion to quash … outside the presence of a plaintiff and outside any lawful ex parte procedure." *Id.* ¶ 123.

[3] In his initial complaint, Kelly named Judge Kaufold as a defendant; the amended complaint does not, presumably because Judge Kaufold is deceased.

## II. DISCUSSION

### A. Count One: Unlawful Search and Seizure

In Count One, Kelly asserts a § 1983 "unlawful search and seizure" claim against Defendant Polk in his individual capacity, the GBI agent who obtained a search warrant and an arrest warrant for Kelly on June 28, 2024. ECF 6 at 33. Kelly alleges that Polk lacked probable cause to obtain a warrant, that the search warrant was overbroad, and that he was arrested and evidence was seized two days after the warrant expired. *Id.* at 33-34.

A constitutional claim brought pursuant to § 1983 must start with the identification of a specific constitutional right that has allegedly been infringed. *Albright v. Oliver*, 510 U.S. 266, 270 (1994). The Fourth Amendment protects individuals from unreasonable search and seizure. *United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Id.* "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* "[T]he law requires that a warrant for an arrest be supported by 'sufficient information to establish probable cause." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). "[P]robable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirements of

the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 564-65 (2004).

Kelly's Fourth Amendment claim against Polk in his individual capacity is sufficient to survive the Court's frivolity review. Kelly alleges that Polk's probable cause affidavit failed to establish the elements of a crime and relied on "speculative" reports, one of which stated that there was "zero digital forensic trace evidence" linking Kelly to a crime. ECF 6 ¶¶ 175, 178. Moreover, Kelly alleges the search warrant authorized the seizure of all electronics without limiting its scope to items relevant to the offense. *Id.* ¶¶ 179-81. Additionally, Kelly plausibly alleges that he was arrested and that some of his property was seized two days after the arrest warrant expired. *Id.* ¶¶ 182-83. At this stage, Kelly has adequately alleged that he was subject to an unreasonable search and seizure under the Fourth Amendment.

No allegations in Count One suggest that Kelly intended to assert a claim against Polk in his official capacity. To the extent he did, that claim is **DISMISSED without prejudice.**

Kelly's Fourth Amendment claim against Polk in his individual capacity will proceed to discovery.

**B. Count Two: Due Process**

In Count Two, Kelly asserts a § 1983 due process claim against Polk in his individual capacity, alleging that Polk manufactured charges against him and misrepresented lawful acts as a felony offense. ECF 6 ¶ 187. Kelly's allegations in support of his due process claim largely rely on the same facts alleged to support his Fourth Amendment claim. "Where a particular Amendment 'provides an explicit textual

source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "So when the Framers consider a matter and drafted an amendment to address it … a substantive-due-process analysis is inappropriate." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019). Kelly alleges that Polk deprived him of due process by intentionally misrepresenting lawful acts as a felony and proceeding with an investigation on those facts. ECF 6 ¶ 187. Kelly's claims fall squarely within the Fourth Amendment's protection against unlawful prosecution and, therefore, a due process claim is inappropriate.[4] *See Martin v. Fulton Cty. Sup. Ct.*, 2022 U.S. Dist. LEXIS 153201, at *8 (N.D. Ga. Apr. 14, 2022).

No allegations in Count Two suggest that Kelly intended to assert a claim against Polk in his official capacity. To the extent he did, that claim is **DISMISSED without prejudice.**

Accordingly, Kelly's due process claim against Polk is **DISMISSED without prejudice**.

### C. Count Three: Procedural Due Process

In Count Three, Kelly asserts a § 1983 procedural due process claim against Judge Martin, Commissioner Davis, Sheriff Cape, and Assistant District Attorney Childers in their individual capacities. ECF 6 at 36. According to Kelly, the Defendants coordinated to use his pretrial detention "as physical leverage to extract private property

---

[4] Kelly has not asserted a malicious prosecution claim against Polk or any other defendant. But to the extent his due process claim could be construed as such, any malicious prosecution would fail because Kelly has not alleged that the criminal case has been resolved, much less "terminated in [his] favor," as required to state a malicious prosecution claim. *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

for the economic benefit of Bleckley County." *Id.* ¶ 192. Kelly alleges that Judge Martin violated due process by attending a meeting on August 8, 2024, for the purpose of signing a bond order if Kelly agreed to demands brought forward by Bleckley County. *Id.* ¶ 196. He claims Commissioner Davis violated due process by informing Kelly, by telephone on July 26, 2024, that Kelly's bond negotiations were conditioned on payments of outstanding invoices. *Id.* ¶ 193. Kelly alleges Sheriff Cape violated due process by attending the August 8 meeting and designating Kelly as a "flight risk" "solely to maintain the custodial leverage necessary for the property negotiations. *Id.* ¶ 195. Finally, Kelly alleges Assistant District Attorney Childers arranged the August 8 meeting and "used his influence over the custodial process to condition Plaintiff's release on the surrender of intellectual property and private hosting accounts that were unrelated to the criminal charges." *Id.* ¶ 194.

First, Judge Martin is immune from relief. Judges are entitled to absolute judicial immunity from liability for acts performed while acting in their judicial capacities. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Judicial immunity applies to all judicial acts, even if such acts are alleged to be in error, malicious, or in excess of the judge's authority, unless done in the clear absence of all jurisdiction. *Id.*; *see Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*

*v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005). Absolute judicial immunity extends to both cases for damages and injunctive relief. *Bolin*, 225 F.3d at 1242.

Signing bond orders is a "normal judicial function," and, thus, attending a meeting for that purpose also constitutes a judicial function. *Sibley*, 437 F.3d at 1071. Kelly also alleges that Judge Martin had previously recused herself, suggesting that jurisdiction could be a concern. ECF 6 ¶ 196. When a judge acts in "the clear absence of all jurisdiction," the judge is not immune from relief. *Bolin*, 225 F.3d at 1239. However, "[a]cts done in the clear absence of jurisdiction, for which no immunity is afforded, should be distinguished from actions in excess of jurisdiction, which fall within the ambit of immunity protection." *Price v. Payne*, 2016 WL 10537384, at *3 (N.D. Ga. Dec. 15, 2016) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997). "Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Id.* The allegation that Judge Martin previously recused herself in a matter related to Kelly does not show the clear absence of jurisdiction. *See* ECF 6 ¶ 45. Thus, Judge Martin is immune from suit.

Second, Kelly's due process claim against ADA Childers is barred by prosecutorial immunity. Prosecutors have absolute immunity from civil actions "intimately associated with the judicial phase of the criminal process." *See Imbler*, 424 U.S. at 430. "Such absolute immunity 'extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (quoting *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)). "Prosecutors have absolute immunity when 'filing an information without investigation,

filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate ... complaints about the prison system, [and] threatening ... further criminal prosecutions.'" *Id.* at 1295 (quoting *Henzel v. Gerstein*, 608 F.3d 654, 657 (5th Cir. 1979)). Here, Childers was acting within his role as an advocate of the state by conducting bond negotiations. Thus, Kelly's procedural due process claim against him is barred.

That leaves Kelly's procedural due process claims against Commissioner Davis and Sheriff Cape. To state a procedural due process claim, Kelly must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Lakoskey v. Floro*, 2021 WL 5860460, at *3 (N.D. Ala. Mar. 31, 2022) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Kelly alleges that Davis provided Childers with a list of conditions before any further bond negotiations would proceed, including Kelly's release of "intellectual property and private hosting accounts that were unrelated to the criminal charges." ECF 6 ¶¶ 194, 195. He further alleges that Sheriff Cape designated him as a flight risk "solely to maintain the custodial leverage necessary for the property negotiations." *Id.* ¶ 195. However, Kelly has not alleged that Commissioner Davis or Sheriff Cape were responsible for setting his bond conditions and, thus, has failed to state a due process claim against them.

Kelly's due process claims against Judge Martin, Commissioner Davis, Sheriff Cape, and Assistant District Attorney Childers are, therefore, **DISMISSED without prejudice.**

### D. Count Four: False Arrest and Unlawful Seizure against Crabb, Childers, Wall, and Vaughn

In Count Four, Kelly asserts a § 1983 claim against Officer Crabb, Assistant District Attorney Childers, Judge Wall, and District Attorney Vaughn in their individual capacities for false arrest and unlawful seizure. ECF 6 at 37.

"A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). "[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "[A] non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment." *Jordan v. Mosely*, 487 F.3d 1350, 1354 (11th Cir. 2007).

Count Four arises from Kelly's November 19, 2024 arrest for violating the protective order obtained against him by his former spouse. ECF 6 ¶ 199. Kelly alleges that on November 14, he was in a public waiting room with his former partner and his child. *Id.* ¶ 54. When the child went to his appointment, Kelly allegedly began recording himself "for self-protection." *Id.* ¶ 55. Kelly's former partner, who had a protective order against him, then approached him repeatedly, followed him across the room, and attempted to record his private phone call. *Id.* Kelley alleges that despite Officer Crabb's former determination that Kelly's former spouse was the primary aggressor of the November 24, 2024 incident, Officer Crabb abandoned her prior findings and arrested Kelly at ADA Childers' direction. *Id.* ¶ 203. Kelly alleges that Officer Crabb later provided false statements in her reports and testimony, claiming that Kelly "admitted" to recording

his former partner. *Id.* Kelly also alleges that when both District Attorney ("DA") Vaughn and Assistant District Attorney Childers recommended that Officer Crabb arrest Kelly, they refused to review "exculpatory video evidence" and adopted a "legally meritless theory." *Id.* ¶ 200. Finally, Kelly alleges that Judge Wall provided advice while the field investigation was ongoing and, by doing so, she "acted outside her adjudicative role by … act[ing] as a legal advisor to the investigation." *Id.* ¶ 201. Kelly alleges that no reasonable officer could have found probable cause under the circumstances. *Id.* ¶ 204.

Construed liberally, Kelly has arguably stated a claim for false arrest against Officer Crabb. He alleges that, because Officer Crabb initially determined that Kelly's spouse was the primary aggressor, Officer Crabb knew she lacked probable cause but arrested Kelly anyway at the direction of ADA Childers and DA Vaughn. *See id.* ¶¶ 200, 203. Kelly further alleges that Judge Wall participated in the decision to arrest him by serving as a legal advisor and "ratifying" the legal theory underlying the arrest. Id. ¶ 201. Thus, he has plausibly alleged an unlawful arrest.

Again, Judge Wall is immune from relief. *See Bolin*, 225 F.3d at 1239 (explaining judicial immunity applies to all judicial acts, even if such acts are alleged to be in error, malicious, or in excess of the judge's authority, unless done in the clear absence of all jurisdiction). The issuance of a warrant "is unquestionably a judicial act." *Burns v. Reed*, 500 U.S. 478, 492 (1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 363, n.12 (1978)). Thus, Judge Wall did not act outside her judicial role merely by communicating with law enforcement in determining whether to issue a warrant. Kelly has not alleged that Judge Wall's actions were taken in clear absence of all jurisdiction. Thus, Kelly's false arrest and unlawful seizure claim against Judge Wall is barred.

ADA Childers and DA Vaughn are also immune from relief. As discussed, prosecutors are absolutely immune from civil actions "intimately associated with the judicial phase of the criminal process." See Imbler, 424 U.S. at 430. Decisions about the relevance of evidence and the need for investigation are acts that "further criminal prosecutions" and therefore fall within prosecutorial responsibilities. See Hart, 587 F.3d at 1295 (quoting Henzel, 608 F.3d at 657). Kelly's false arrest and unlawful seizure claims against ADA Childers and DA Vaughn are therefore barred.

Kelly's false arrest claim against Officer Crabb will proceed to discovery. Kelly's false arrest claims against ADA Childers, DA Vaughn, and Judge Wall are **DISMISSED.**

**E. Count Five: Fabrication of Evidence and False Statements against Crabb and Leopard**

In Count Five, Kelly asserts a § 1983 claim against Defendants Officer Crabb and Captain Leopard in their individual capacities, alleging they fabricated evidence used to secure and sustain his detention following his November 19, 2024 arrest, in violation of the Fourth Amendment. ECF 6 ¶¶ 206-16.

Here, Kelly alleges that Officer Crabb "fabricated a critical admission in her official police reports and subsequent testimony." *Id.* ¶ 207. Specifically, Kelly alleges that Crabb falsely reported that Kelly admitted to recording his former partner in violation of the protective order, when Kelly actually told Crabb that he was recording himself for "self-protection." *Id.* ¶¶ 206-09. "There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir. 1997). To the extent Kelly's fabrication claim is based on Crabb's allegedly false account of his admission,

those allegations also underlie his Fourth Amendment false-arrest claim against Crabb in Count IV. As explained, that claim will proceed to discovery.

To the extent Kelly seeks damages based on Crabb's subsequent testimony at the bond-revocation hearing or civil trial, however, Crabb is absolutely immune from § 1983 liability for her testimony as a witness, even if that testimony was false*. See Jones v. Cannon*, 174 F.3d 1271, 1286-87 (11th Cir. 1999); *see also Briscoe v. Lahue*, 460 U.S. 325, 342-43 (1983) (explaining the policy considerations supporting witness immunity apply with particular force to police officers who testify as witnesses).

Kelly's allegations against Leopard concern different conduct. Kelly alleges that Leopard "knowingly or with reckless disregard for the truth used the fabricated confession to procure a search warrant" even though a review of the "field evidence" would have revealed that no such confession existed. *Id.* ¶¶ 211, 213. Liberally construed, these allegations are arguably sufficient at this early stage to state a Fourth Amendment claim against Leopard. *See Madiwale,* 117 F.3d at 1326-27 (explaining that a search warrant supported by an affidavit that "contains 'deliberate falsity or ... reckless disregard' for the truth" may lack probable cause and be found void under the Fourth Amendment. (quoting *Franks v. Delaware,* 438 U.S. 154, 171 (1978))).

No allegations in Count Five suggest that Kelly intended to assert a claim against Officer Crabb or Captain Leopard in their official capacity. To the extent he did, that claim is **DISMISSED without prejudice.**

Kelly's Fourth Amendment claims against Officer Crabb and Captain Leopard will proceed to discovery.

**F. Count Six: First Amendment Retaliation against Cape**

In Count Six, Kelly asserts a First Amendment retaliation claim under § 1983 against Sheriff Cape in his individual capacity. ECF 6 ¶¶ 217-25. Kelly alleges that on July 10, 2024, he made "public complaints and statements concerning the conduct and operations of the Bleckley County Sheriff's Office. *Id.* ¶ 218. That day, Sheriff Cape allegedly "publish[ed] a false and stigmatizing narrative" about Kelly on the Bleckley County Sheriff's Office Facebook page. *Id.* ¶ 219. Kelly alleges that Sheriff Cape's post was retaliation in violation of the First Amendment. *Id.* ¶ 217.

To state a claim for retaliation, Kelly must allege (1) "that his speech or act was constitutionally protected"; (2) "that the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). An adverse action is one that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights.'" *Id.* (citation modified). However, "special concerns arise when an official's 'own First Amendment rights are implicated.'" *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (quoting *Dixon v. Burke Cty.*, 303 F.3d 1271, 1275 (11th Cir. 2002)). Other circuits "have required that an official's retaliatory speech amount to a threat, coercion, or intimidation to reconcile" the competing First Amendment interest. *Id.* (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 n.13 (4th Cir. 2000)). However, when an official's retaliatory speech constitutes actionable defamation, the Eleventh Circuit has declined to impose a heightened standard. *Id.* at 1322-23. Here, Kelly alleges that Sheriff Cape published

false statements about him in retaliation for his social media posts. ECF 6 ¶¶ 217-25. His allegations are sufficient, at this stage, to state a claim.

Kelly's First Amendment retaliation claim against Sheriff Cape shall proceed to discovery.

**G. Count Seven: Due Process against Vaughn**

In Count Seven, Kelly asserts a § 1983 due process claim against DA Vaughn in his individual capacity. ECF 6 ¶¶ 226-30. Kelly claims that Vaughn improperly intervened in his civil custody evidentiary hearing by moving to quash video evidence obtained during Kelly's November 19, 2024 altercation with his former partner. *Id.* ¶¶ 226, 227. However, Vaughn is entitled to prosecutorial immunity.

Again, a prosecutor is "entitled to absolute immunity for 'acts undertaken … in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state." *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976). This immunity applies even if the prosecutor acted with a malicious or improper motive or intentionally acted in bad faith. *See Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). Here, Kelly alleges that Vaughn moved to suppress video evidence in his civil custody case because the video was evidence in an ongoing criminal investigation. ECF 6 ¶¶ 120, 227. Vaughn's actions were taken in preparation for judicial proceedings and, thus, even if the motion to quash was improper, Vaughn is immune from suit.

Accordingly, Kelly's due process claim against Vaughn is **DISMISSED**.

### H. Count Eight: Municipal Liability against City of Cochran, Georgia

In Count Eight, Kelly asserts municipal liability claims against the City of Cochran, Georgia. ECF 6 at 45-49. "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, only when the City's policy or custom causes a constitutional violation may a municipality be held responsible. *Grech*, 335 F.3d at 1329; *Monell*, 436 U.S. at 694. Specifically, "to impose § 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A "custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.*

Kelly alleges his claim against the City of Cochran arises from its "official ratification of constitutional violations committed by its officers and its custom of denying citizens equal access to law enforcement complaint procedures." ECF 6 ¶ 231. Specifically, Kelly alleges that the City of Cochran ratified the alleged misconduct of Officer Crabb and Captain Leopard connected to the November 19, 2024 arrest and subsequent hearings. *Id.* ¶¶ 231-40. However, one incident is not sufficient to demonstrate a custom "so settled and permanent that it takes on the force of law," and Kelly has failed to show an officially adopted policy relating to the Officers' conduct.

*Sewell*, 117 F.3d at 489. Accordingly, Kelly fails to state a claim against the City of Cochran.

Count Eight is, therefore, **DISMISSED without prejudice**.

**I. Count Nine: Municipal Liability against Bleckley County, Georgia**

In Count IX, Kelly alleges that Defendant Davis, the Commissioner of Bleckley County, and Sheriff Cape participated in, and were "the moving force" behind his bond negotiations, which he claims violated the Fourth Amendment by conditioning bond on "assets entirely unrelated to the criminal charges." ECF 6 ¶¶ 241-51. If a municipal officer acts as the final decisionmaker, the official's sole act can subject the municipality to § 1983 liability. *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). However, municipal liability only attaches "if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). Here, while Kelly alleges that Davis had final policymaking authority over county property and contracts, Kelly has not alleged that Davis had sole final policymaking authority with respect to setting his bond conditions. Additionally, Kelly does not allege that Sheriff Cape, who allegedly maintained that Kelly was a "flight risk" to "ensure Plaintiff remained in custody" had final policymaking control over Kelly's bond conditions. ECF 6 ¶ 248. Thus, the participation of Commissioner Davis and Sheriff Cape in Kelly's bond negotiations does not subject Bleckley County to municipal liability.

Count Nine is **DISMISSED without prejudice**.

**J. Count Eleven: Denial of Access to the Courts, First Amendment Retaliation, and Deprivation of Due Process.**

In Count Eleven,[5] Kelly asserts § 1983 claims against Officer John Doe, Chief Trawick, and Deputy Denmark, alleging they are liable in their individual capacities for attempting to "obstruct [his] right to petition the government for redress" and retaliating against him "for reporting criminal misconduct by public officials." ECF 6 ¶ 252. Kelly alleges that on August 14, 2024, Kelly attempted to file a complaint against Commissioner Davis, and the John Doe defendant refused to accept his complaint and threatened Kelly. *Id.* ¶ 253. Kelly alleges he reported the unnamed Officer's actions to Chief Trawick, who allegedly failed to take action. *Id.* ¶ 255. Finally, Kelly alleges that during a subsequent interview, Deputy Denmark "intentionally and falsely" recast his complaint as a "civil dispute over county records." *Id.* ¶ 256. Kelly alleges the Defendants' actions deprived him of his First Amendment right to petition and of due process.

Generally, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (2010). An exception to the prohibition on fictitious-party pleading exists when the plaintiff's description of the defendant is "'at the very worst, surplusage' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Velma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 & n.6 (11th Cir. 1992)). Here, Kelly provides no information about John Doe's identity other than that he is a police officer with the City of Cochran Police Department. See ECF 6. That is an insufficient

[5] Kelly's amended complaint does not contain a Count Ten.

description to allow for the service of process. Accordingly, Kelly's claim against the John Doe defendant is **DISMISSED without prejudice**.

As to Kelly's claim against Chief Trawick and Deputy Denmark, private citizens have "no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. United States Attorney Gen*., 832 F.2d 141, 141 (11th Cir, 1987). Thus, Kelly fails to state a claim based on Chief Trawick and Deputy Denmark's alleged refusal to accept his complaint or to take further action.

Count Eleven against Defendants John Doe, Chief Trawick, and Deputy Denmark is **DISMISSED without prejudice**.

## III. CONCLUSION

In sum, the following claims are **DISMISSED without prejudice**: (1) Kelly's due process claim against Agent Polk (Count Two); (2) Kelly's procedural due process claim against Judge Martin, Commissioner Davis, Sheriff Cape, and Assistant District Attorney Childers (Count Three); (3) Kelly's false arrest claim against Assistant District Attorney Childers, District Attorney Vaughn, and Judge Wall (Count Four); (4) Kelly's due process claim against District Attorney Vaughn (Count Seven); (5) Kelly's municipal liability claim against the City of Cochran (Count Eight); and (5) Kelly's municipal liability claim against Bleckley County (Count Nine); and (6) Kelly's First Amendment and due process claim against Officer John Doe, Chief Trawick, and Deputy Denmark (Count Eleven). All defendants sued in their official capacity are **DISMISSED.**

The following claims will proceed to discovery: (1) Kelly's Fourth Amendment claim against Agent Polk, in his individual capacity (Count One); (2) Kelly's false arrest claim against Officer Crabb, in her individual capacity (Count Four); (3) Kelly's Fourth

Amendment claim against Officer Crabb and Captain Leopard, in their individual capacities, arising from alleged false statements (Count Five); and (4) Kelly's First Amendment retaliation claim against Sheriff Cape, in his individual capacity (Count Six).

Accordingly, it is **ORDERED** that service be made on the following defendants by the United States Marshal Service: Officer Brandi Crabb and Captain Matthew Leopard of the Cochran Police Department; Bleckley County Sheriff Daniel Cape; Bleckley County Commissioner Mike Davis; and Georgia Bureau of Investigation Agent Zachary Polk.

The plaintiff is advised that he must serve upon opposing counsel (or defendants if the defendants are not represented by counsel) copies of all motions, pleadings, discovery, and correspondence (including letters to the Clerk or to a judge) filed with the Clerk of Court. Fed. R. Civ. P. 5(a). The plaintiff shall include with any paper which is filed with the Clerk of Court a certificate stating the date on which a true and correct copy of that paper was mailed to defendants or the defendants' counsel. The Clerk of Court will not serve or forward to defendants or the defendants' counsel copies of any materials filed with the Court.

In addition, the following limitations are imposed on discovery: except with written permission of the Court first obtained, (1) interrogatories may not exceed twenty-five to each party (Local Rule 33.1), (2) requests for production of documents and things under Rule 34 of the Federal Rules of Civil Procedure may not exceed ten requests to each party (Local Rule 34), and (3) requests for admissions under Rule 36 of the Federal Rules of Civil Procedure may not exceed fifteen requests to each party (Local Rule 36).

The plaintiff is responsible for diligently prosecuting his complaint and failure to do so may result in dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. The plaintiff is required to keep the Clerk of Court advised of his current address during the pendency of this action. Failure to promptly advise the Clerk of any change of address may result in the dismissal of this action.[6]

**SO ORDERED**, this 17th day of September, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

[6] The Clerk is **DIRECTED** to serve a copy of this Order with the Complaint.